[No. 56565-1.  En Banc.  May 3, 1990.]

THE STATE OF WASHINGTON, *Respondent*, v. DANIEL WAYNE BYTHROW, *Petitioner*.

*Julie A. Kesler* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney, Donna L. Wise, Senior Appellate Attorney,* and *Marta Lowy, Deputy,* for respondent.

DORE, J.—The trial court denied defendant's motion to sever two counts of robbery after balancing possible prejudice to defendant to have a fair trial and the concern for judicial economy. After conviction on both counts and affirmance by the Court of Appeals, defendant sought review. We affirm.

FACTS
Gull Station Robbery

On October 31, 1987, a Gull station in Kent was robbed by two men. The attendant on duty testified that defendant Daniel Bythrow came around the counter, pulled out a knife, held it to his back and demanded money. Bythrow took the money out of the till while a second man acted as a lookout. After Bythrow tried to get money out of a safe, he told the attendant to "Stay there for ten minutes, otherwise we'll—my partner will shoot you." Report of Proceedings, at 184.

The attendant specifically looked at Bythrow's face in order to "get a good description" and "to remember [his] features." Report of Proceedings, at 181. The lighting in the cashier's area was bright. The attendant was face–to–face with the defendant, and he studied his face for approximately 15 seconds. An officer contacted the attendant a few days later to do a composite drawing. The attendant had studied art for 6 years and had received training in drawing facial features. The attendant picked out defendant's picture from a photo montage. In court he testified that he was "definite, for sure" certain that the defendant in the courtroom was the person who robbed him. Report of Proceedings, at 189.

Bythrow denied any involvement in the robbery. He testified that October 31 was his birthday, and he was at home with friends all evening. Bythrow didn't call any of his "birthday" friends at trial to corroborate his alibi.

Dunkin Donuts Robbery

On November 2, 1987, a Dunkin Donuts store on Bothell Way was robbed. One employee testified that she was counting the till at the end of her afternoon shift when two men, who were later identified as Bythrow and Michael Perry, came into the store. She motioned for another employee to assist the men at the counter. The second

employee testified that when she went to help, the shorter one, Bythrow, said "How's it going?" Report of Proceedings, at 158. The taller robber, Perry, then pulled out a gun. One of the two men said, "This is not a joke, get on the floor", and "Hand him a bag". Report of Proceedings, at 40, 158. The manager of Dunkin Donuts said Perry scooped money out of the cash register and put it into the bag. The men ordered the employees to lie down on the floor for 10 minutes and then they left. Two firemen, who were parked outside, observed the two men fleeing. Perry got into a waiting car; Bythrow fled on foot. Ten to fifteen minutes later the car was stopped by police. Bythrow, at this point, was in the backseat of the car; Perry was in front, and Perry's wife, Marsha, was driving. A gun and a Dunkin Donuts bag containing money were recovered from the car. An officer told Bythrow he was under arrest for armed robbery. Bythrow responded, "Armed robbery? Did you find a gun on me?" Report of Proceedings, at 64. Perry did not admit to the robbery, but asked "if I admitted to doing something, would you make it easier for [Bythrow and my wife]?". Report of Proceedings, at 202–03.

Bythrow defended the Dunkin Donuts robbery on the ground that he did not know Perry was going to commit a robbery when they entered the store. Perry testified and corroborated Bythrow's defense. Perry acknowledged that the getaway car belonged to Bythrow's girl friend, and the gun belonged to another one of his girl friends. The employee that assisted Bythrow and Perry at the counter testified that Bythrow, who greeted her at the counter, did the talking throughout the robbery. The manager testified similarly.

On cross examination, Bythrow was asked whether he had discussed the Dunkin Donuts robbery with the investigating detective and had tried to make an "arrangement". Bythrow responded that he had not discussed the robbery directly but had offered to provide information on drug

dealers in return for what he felt was an appropriate disposition of the robbery charge. In rebuttal, the detective testified that Bythrow told him Perry had talked him into the Dunkin Donuts robbery. Bythrow's counsel unsuccessfully objected to both the cross examination and the rebuttal testimony on the ground that they were inadmissible plea–bargaining evidence.

Bythrow moved unsuccessfully to sever the two counts of robbery. After conviction on both counts, we accepted review.

## ANALYSIS

■ CrR 4.3(a) permits two or more offenses of similar character to be joined in one trial.[1] Offenses properly joined under CrR 4.3(a), however, may be severed if "the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense." CrR 4.4(b).[2] The failure of the trial court to sever counts is reversible only upon a showing that the court's decision was a manifest abuse of discretion.[3] *State v. Philips*, 108 Wn.2d 627, 741 P.2d 24 (1987) (joinder of defendants); *State v. Thompson*, 88 Wn.2d 518, 564 P.2d 315

---

[1]CrR 4.3 provides in part:

"(a) **Joinder of Offenses.** Two or more offenses may be joined in one charge . . . when the offenses . . .

"(1) Are of the same or similar character, even if not part of a single scheme or plan; . . .

" . . . .

"(c) **Failure To Join Related Offenses.**

" . . . .

"(2) When a defendant has been charged with two or more related offenses, the timely motion to join them for trial should be granted . . .".

[2]CrR 4.4 provides in part:

"(b) **Severance of Offenses.** The court . . . shall grant a severance of offenses whenever . . . the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense."

[3]Beginning in 1919, the Legislature vested the right to a separate trial in the discretion of the trial court. Thus, from a right vested absolutely in the defendant, it was changed to one discretionary with the court. *State v. Clark*, 156 Wash. 47, 50, 286 P. 69, 85 A.L.R. 502 (1930).

(1977). Defendants seeking severance have the burden of demonstrating that a trial involving both counts would be so manifestly prejudicial as to outweigh the concern for judicial economy. *State v. Smith,* 74 Wn.2d 744, 755, 446 P.2d 571 (1968), *vacated in part,* 408 U.S. 934, 33 L. Ed. 2d 747, 92 S. Ct. 2852 (1972), *overruled on other grounds in State v. Gosby,* 85 Wn.2d 758, 539 P.2d 680 (1975).

*Smith* recognized joinder of offenses may prejudice a defendant in that

> (1) he may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find.

*Smith,* at 755 (quoting *Drew v. United States,* 331 F.2d 85, 88 (D.C. Cir. 1964)).

Bythrow claims that it was inevitable that the jury would use evidence that he had been present at the Dunkin Donuts robbery to infer that he was a participant in the Gull station robbery. And once Bythrow was identified as the perpetrator of the Gull robbery, the jury would use the Gull robbery to discount Bythrow's defense to the Dunkin Donuts robbery. Bythrow relies on *State v. Harris,* 36 Wn. App. 746, 677 P.2d 202 (1984) and *State v. Ramirez,* 46 Wn. App. 223, 226, 730 P.2d 98 (1986) for the proposition that it is reversible error to deny a severance motion when one count would not be admissible in a separate trial of the other count under ER 404(b).

Both *Harris* and *Ramirez* involved sexual offenses where the court recognized the "'great potential for prejudice inherent in evidence of prior sexual offenses'". *Harris,* at 752; *Ramirez,* at 227 ("the prejudice potential of prior acts is at its highest" in sex cases). The court found the lack of cross admissibility of the two counts created a strong likelihood of prejudice warranting severance in those cases. Here, the evidence of the two robbery counts does not involve the inherently prejudicial effect of prior sexual

offenses. Furthermore, the Gull station robbery would be admissible in a separate trial of the Dunkin Donuts robbery under ER 404(b).

ER 404(b) provides evidence of other crimes cannot be used to prove conduct on a particular occasion. However, such evidence can be used

> To show, by similar acts or incidents, that the act in question was not performed inadvertently, accidentally, involuntarily, or without guilty knowledge.

(Footnotes omitted.) E. Cleary, *McCormick on Evidence* § 190, at 561 (3d ed. 1984); *see also* 5 K. Tegland, Wash. Prac., *Evidence* § 114, at 390 (1969).

The question of Bythrow's guilty intent in committing the Dunkin Donuts robbery is the major issue in dispute. Evidence of the Gull station robbery, which was committed only 2 days earlier, is probative of Bythrow's guilty state of mind and is admissible to rebut Bythrow's claim that he was "inadvertently" present during the Dunkin Donuts robbery. The Gull station robbery evidence directed the jury's attention to Bythrow's defense that he did not know a robbery was going to take place at Dunkin Donuts. The fact that Bythrow had not yet been convicted of the Gull station robbery does not necessarily preclude the use of such evidence. As explained in *McCormick on Evidence,* the fact that

> the defendant is guilty of another relevant crime need not be proved beyond a reasonable doubt. The measure of proof that the defendant is guilty of the other crime is variously described, including "substantial" and "clear and convincing." If the quoted measures apply then the other crimes evidence should be potentially admissible even if the defendant was acquitted of the other charge.

(Footnotes omitted.) *McCormick,* at 564. In Washington, the standard of proof for admission of other crimes is "preponderance of the evidence". *State v. Tharp,* 96 Wn.2d 591, 594, 637 P.2d 961 (1981). The eyewitness testimony of the Gull station attendant that Bythrow committed the robbery satisfies the requisite standard of proof and would be

admissible in a separate trial of the Dunkin Donuts robbery.

██ Evidence of the Dunkin Donuts robbery, however, would not be admissible to prove identity in the Gull station robbery. Evidence of other crimes is not admissible to prove identity under ER 404(b) unless the method employed in the commission of both crimes is so unique that mere proof that an accused committed one of them creates a high probability that he committed the other crime charged. *State v. Smith,* 106 Wn.2d 772, 777, 725 P.2d 951 (1986). The manner in which each robbery was committed here is not unique. Any general similarities between the two crimes "might have been as much due to coincidence as to modus operandi." *Smith,* at 779.

SEVERANCE IS NOT AUTOMATICALLY REQUIRED WHEN
EVIDENCE OF ONE COUNT WOULD NOT BE
ADMISSIBLE IN A SEPARATE TRIAL
ON THE OTHER COUNT

██ Even where the evidence of one count would not be admissible in a separate trial of the other count, defendant's proposition that severance is required in every case is erroneous. In order to support a finding that the trial court abused its discretion in denying severance, the defendant must be able to point to specific prejudice. *State v. Grisby,* 97 Wn.2d 493, 507, 647 P.2d 6 (1982), *cert. denied,* 459 U.S. 1211 (1983). In *Grisby,* we rejected defendants' argument that when mutually antagonistic defenses are offered, severance must be granted as a matter of law. While we recognized that mutually antagonistic defenses may on occasion be sufficient to support a motion for severance, the burden is upon the defendant to *demonstrate* undue prejudice resulting from a joint trial. Similarly, the fact that separate counts may not be cross admissible does not necessarily represent a sufficient ground as a matter of law.

The federal courts have taken a similar view. As stated in *United States v. Johnson,* 820 F.2d 1065, 1071 (9th Cir. 1987):

> Even if the evidence would not have been admissible, the district court did not abuse its discretion because the jury was not likely in this case to confuse which count particular evidence was introduced to establish. When evidence concerning the other crime is limited or not admissible, our primary concern is whether the jury can reasonably be expected to "compartmentalize the evidence" so that evidence of one crime does not taint the jury's consideration of another crime. . . . We must insure that the trial court properly instructed the jury on the limited admissibility of evidence, . . . and will determine whether the jury appeared to have followed the instructions.

(Citation omitted.) When the issues are relatively simple and the trial lasts only a couple of days, the jury can be reasonably expected to compartmentalize the evidence. *United States v. Brady*, 579 F.2d 1121, 1128 (9th Cir. 1978), *cert. denied*, 439 U.S. 1074 (1979). Under these circumstances, there may be no prejudicial effect from joinder even when the evidence would not have been admissible in separate trials. *Drew*, 331 F.2d at 91.

On a similar issue between codefendants, this court has consistently held that the mere fact that evidence admissible against one defendant would not be admissible against a codefendant if the latter were tried alone does not necessitate severance. *State v. Philips*, 108 Wn.2d 627, 741 P.2d 24 (1987). As in the federal cases, our cases focus on the ability of the jury to isolate the evidence in determining whether reversible error has occurred. Where the jury was instructed not to consider certain evidence of one defendant, such as a confession, against the codefendant no reversible error was found. However it was found to be error where such an instruction was not given. *State v. Badda*, 63 Wn.2d 176, 179, 385 P.2d 859 (1963).

In addition to the jury's ability to compartmentalize the evidence, we look to the strength of the State's evidence to determine whether a prejudicial effect will be produced by joinder. When the State's evidence is strong on each count, there is no necessity for the jury to base its finding of guilt

on any one count on the strength of the evidence of another. *Smith,* 74 Wn.2d at 755.[4]

### PREJUDICE TO DEFENDANT MUST OUTWEIGH CONCERNS FOR JUDICIAL ECONOMY

Defendants seeking severance must not only establish that prejudicial effects of joinder have been produced, but they must also demonstrate that a joint trial would be so prejudicial as to outweigh concern for judicial economy. *Philips,* 108 Wn.2d at 640.

As noted in a recent California case:

> A ruling on a motion to sever is based on a weighing of the probative value of any cross–admissible evidence against the prejudicial effect of evidence the jury would not otherwise hear, but in the weighing process the beneficial results of joinder are added to the probative value side. Therefore a defendant seeking severance must make an even stronger showing of prejudicial effect than would be required in determining whether to admit other–crimes evidence in a severed trial.

(Citation omitted.) *People v. Bean,* 46 Cal. 3d 919, 936, 760 P.2d 996, 251 Cal. Rptr. 467 (1988), *cert. denied,* 110 S. Ct. 1499 (1990). In *State v. Gatalski,* 40 Wn. App. 601, 609 n.6, 699 P.2d 804, *review denied,* 104 Wn.2d 1019 (1985) the court recognized

> [s]everance questions involve considerations of the judicial economy gained when cases can be tried together; these considerations are not present in a pure ER 404(b) case. We do not hold or imply that severance is required in every case where the evidence of one count would not be admissible in a separate trial of the other counts.

*See also Smith,* 74 Wn.2d at 755 (quoting *Drew,* 331 F.2d at 88) ("must weigh prejudice to the defendant caused by

---

[4]This approach is similar to the harmless error analysis under ER 404(b). When evidence that is nonadmissible is nonetheless admitted, the question then is whether there is harmless error. *State v. Jackson,* 102 Wn.2d 689, 695, 689 P.2d 76 (1984). Only if the outcome of the trial would have been different had the errors not occurred is the error deemed reversible error. *Jackson,* at 695. In making such a determination, the court obviously looks to the strength of the State's evidence. If the evidence is strong on each count then the results of the trial would not have been different if the error had not occurred. On the other hand, if the State's evidence is weak on each count then the outcome of the trial would be different.

the joinder against the obviously important considerations of economy and expedition in judicial administration."). 

Bythrow's trial lasted 2 days. The State presented evidence of the robberies in sequence with one exception. Different witnesses testified concerning different offenses. The issues and defenses were simple and distinct. The court instructed the jury that "[a] separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count." Clerk's Papers, at 65. Instruction 13A. Admittedly, the joinder of counts similar in nature—here, robberies committed with a weapon—creates a greater danger of prejudice than the joinder of two defendants charged with the same crime. Nonetheless, in light of the short trial, the relatively simple issues, the jury instructions, and the strength of the State's evidence, it does not appear likely that the jury was influenced in determining defendant's guilt of either robbery by knowledge of the other.

## Conclusion

Any residual prejudice resulting from joinder in this case must be weighed against the concerns for judicial economy. Foremost among these concerns is the conservation of judicial resources and public funds. A single trial obviously only requires one courtroom and judge. Only one group of jurors need serve, and the expenditure of time for jury voir dire and trial is significantly reduced when the offenses are tried together. Furthermore, the reduced delay on the disposition of the criminal charges, in trial and through the appellate process, serves the public. We find these considerations outweigh the minimal likelihood of prejudice through joinder of the charges in this case.[5]

---

[5]The trial court properly evaluated whether the prejudicial effects of joinder had been achieved and then weighed any prejudice against the concerns for judicial economy. It first rejected Bythrow's argument that he would be prejudiced by joinder because any prejudice will be "handled by instructions" and the "jury follows the instructions." Report of Proceedings, at 9. Further, the court found that the evidence on each count was strong: "I think both are strong cases. I don't think that evidence of one is needed for another." Report of Proceedings, at 9–10.

A denial of a motion for severance of offenses under CrR 4.4(b) may be set aside after a weighing process of prejudice to defendant, as compared to concerns for judicial economy, and upon a showing that the court's decision was a manifest abuse of judicial discretion.

Bythrow argues it was error for the trial court to admit certain statements he made to Detective Gies. Because we agree with the Court of Appeals that the record is not sufficiently developed to determine whether or not Bythrow's statements were plea related, we find no error.

Affirmed.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.

Finally, the court weighed the considerations of judicial economy: "I think it would be an awful thing to divide or separate these cases, actually three cases the way you want it. I think it would be a waste of [the] attorney's time and it would be a waste of jury time. It would be a waste of Court time." Report of Proceedings, at 10.