2015 JAN 20 AM 9: 34



IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>DEVENEE JEAN KELTNER,<br><br>Appellant. | No. 70623-3-I<br><br>UNPUBLISHED OPINION<br><br>FILED: January 20, 2015 |

SCHINDLER, J. — Within a few hours of a residential burglary, Devenee Jean

Keltner and an acquaintance purchased items at nearby businesses with credit cards,

identification, and checks stolen in the burglary. Keltner appeals her convictions for

residential burglary, identity theft, and possession of stolen property, arguing that her

burglary conviction is not supported by sufficient evidence and that she received

ineffective assistance of counsel. We reverse the residential burglary conviction. On

remand, the court shall dismiss that conviction with prejudice. We affirm the convictions

for second degree identity theft and first degree possession of stolen property.

FACTS

Based on surveillance videos and other evidence linking Devenee Jean Keltner

to the possession and use of property stolen in a residential burglary, the State charged

her with one count of residential burglary, four counts of second degree identity theft, and one count of first degree possession of stolen property.

The State's evidence at trial established that around 2:00 p.m. on September 6, 2011, Erin and Dan Cox discovered their Burlington residence had been burglarized. The burglar or burglars entered by breaking a laundry room window. A locked door to an upstairs room was open and a gun vault was pried open. The burglar or burglars took a camera, two camera lenses, a camera bag, a Hewlett Packard laptop, a backpack, a pistol, a change jar, luggage, and a purse containing Erin Cox's credit cards, identification, checks, and keys. A package delivered by United Parcel Service at 11:44 a.m. that morning was missing from the doorstep.

At 2:56 p.m., a man and woman in a dark-colored Ford Mustang entered the drive-through window of a U.S. Bank branch in Mount Vernon. The Mustang had luggage in the back. A person claiming to be Erin Cox cashed a $900 check using Cox's identification.

At 3:13 p.m., Erin Cox's credit cards were used to make three purchases, including two for gas, at a Valero gas station not far from the U.S. Bank.

At 3:42 p.m., a man and woman using Erin Cox's Best Buy card spent $1,716.01 on a laptop, stereo, and other accessories at a nearby Best Buy.

At 4:15 p.m., a man and woman used Erin Cox's Costco Wholesale membership card to purchase computers, televisions, and rings at a nearby Costco store. They repeatedly told a Costco employee that their purchases were replacing items taken in a burglary of their home. They paid with a check stolen in the burglary and drawn on the

Coxes' U.S. Bank account in the amount of $1,955.11. A Costco cashier identified Keltner at trial as the person who wrote the check.

A half hour later, a woman bought food, beer, a gift card, and cigarettes at a Shell gas station using Erin Cox's credit card.

Police reviewed surveillance videos from the businesses where these transactions occurred. The videos showed a red Mustang and a white Mustang at both gas stations. The police were able to trace a partial license plate number on the red Mustang. The Mustang was registered to Devenee Keltner.

On September 13, 2011, Keltner transferred title to her red Mustang, claiming she had traded it for another vehicle in a "no cash" deal.

That same day, Skagit County Detective Ben Hagglund interviewed Keltner at her stepfather's residence. Keltner wore a ring purchased at Costco with Erin Cox's check and membership card. Detective Hagglund found camera equipment, a laptop, a backpack, and other items belonging to the Coxes in Keltner's bedroom. Detective Hagglund later recovered a television from Keltner's mother that was also purchased at Costco.

After the State rested, Keltner's attorney moved to dismiss the residential burglary charge due to insufficient evidence. The prosecutor opposed the motion, arguing that jurors could infer that the persons using the stolen property shortly after the burglary were the burglars. The court denied the motion to dismiss, noting that acting as a lookout would be sufficient participation to support a burglary conviction.

Keltner testified and denied taking part in the burglary. Keltner claimed she met an acquaintance, Jerold Weller, at a gas station on the afternoon of the burglary because she needed gas. She was driving a red Mustang. Weller was driving a white Mustang. Weller used a credit card to put gas in both cars. Weller gave Keltner a credit card bearing Erin Cox's name so she could purchase cigarettes and Gatorade inside the station. Weller led Keltner to believe he had permission to use Cox's card.

Keltner then followed Weller to Best Buy where he bought a stereo and urged her to pick out a laptop for herself. According to Keltner, they separated until they met at another gas station at 6:00 p.m. Keltner said Weller needed gas again and his white Mustang was "full of stuff," including luggage, a printer from Costco, and a television. They then drove to Keltner's stepfather's residence where they moved all of their things, including the items in Weller's car, into a bedroom they were going to share. Keltner testified that Weller was present when Detective Hagglund came by the house a week later, but Weller escaped out of a back window before Detective Hagglund came inside.

Keltner admitted signing Erin Cox's name on the credit card receipts at Best Buy and the two gas stations, but denied signing the checks at U.S. Bank and Costco. She admitted having 15 convictions for crimes of dishonesty, including convictions for burglary, identity theft, forgery, and possession of stolen property.

In closing argument, defense counsel argued that the burglary must have been committed by someone who was stronger than Keltner:

> This gun vault safe was the door that was pried open. . . . That's
> something that would take a fair amount of strength. And if you look at
> Ms. Keltner, just again using our common sense this is not the type of
> person that's going to be able to do something like that. If you look at the

sequence of events getting into the house through this window, that's fairly high. Getting through the window that had glass on it . . . , getting into this gun room, getting this door open, getting this safe open, I think the obvious answer to this is that it's not going to be Keltner. This would have to be an adult male who did this type of a thing.

The State did not request and the court did not give a jury instruction on accomplice liability. The jury convicted Keltner as charged. Keltner appeals.

ANALYSIS

Keltner contends her conviction for residential burglary is not supported by sufficient evidence. Evidence is sufficient if, when viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A challenge to the sufficiency of the evidence admits the truth of the State's evidence and requires us to draw all reasonable inferences from the evidence in favor of the State. Salinas, 119 Wn.2d at 201.

To convict Keltner of residential burglary, the State had to prove that she entered or remained unlawfully in a dwelling.[1] Because the court did not give an accomplice liability instruction, the State could not carry its burden by simply proving that Keltner assisted someone who entered the dwelling; rather, it had to prove beyond a reasonable doubt that Keltner entered the dwelling. See State v. Willis, 153 Wn.2d 366, 374-75, 103 P.3d 1213 (2005). The State contends it presented sufficient circumstantial evidence to support an inference that Keltner entered the Cox residence. The State points out that possession of recently stolen property plus other slight corroborative

_____

[1] RCW 9A.52.025(1).

5

evidence of guilt, such as presence near the crime scene, flight, false statements, or improbable or inconsistent explanations, will support a burglary conviction. See State v. Mace, 97 Wn.2d 840, 844-45, 650 P.2d 217 (1982). The State claims Keltner's possession of recently stolen property, false statements to Costco employees, forged checks, and use of the credit cards shortly after the burglary support an inference that she entered the Cox residence. We disagree.

While the evidence the State cites may have been sufficient to support accomplice liability, it is not sufficient to prove beyond a reasonable doubt that Keltner unlawfully entered or remained in the Cox residence. Had Keltner acted alone, we might conclude otherwise. But based on the evidence, the burglary could have been committed by Weller, Keltner, or both, and Keltner could have merely acted as an accomplice outside the house. Moreover, the evidence supported an inference that someone stronger than Keltner entered the house. There was also no evidence that more than one person entered the residence. In these circumstances, and in the absence of an accomplice liability instruction, the evidence was insufficient for any rational trier of fact to conclude beyond a reasonable doubt that Keltner unlawfully entered or remained in the Cox residence. The residential burglary conviction must be reversed and dismissed with prejudice.

Keltner next contends her attorney was ineffective for failing to seek dismissal and severance of the burglary charge prior to trial. To establish ineffective assistance of counsel, Keltner must demonstrate both deficient performance and prejudice, i.e., a reasonable probability that the result of the trial would have been different but for

counsel's alleged omission. State v. West, 139 Wn.2d 37, 41-42, 983 P.2d 617 (1999) (citing Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). There is a strong presumption of effective assistance, and deficient performance cannot be established if counsel's decisions can be fairly characterized as strategic or tactical. State v. McFarland, 127 Wn.2d 322, 335-36, 899 P.2d 1251 (1995).

Keltner contends her attorney's failure to move to dismiss the burglary charge prior to trial was deficient performance because it resulted in the jury hearing evidence that prejudiced her defense on the other charges. But Keltner offers no basis to conclude that a pretrial motion to dismiss would have fared any better than counsel's mid-trial motion. At either point in the proceedings, accomplice liability was still a viable theory and that theory arguably supported the court's ruling denying the motion to dismiss. Keltner has not established either deficient performance or a reasonable probability that the court would have decided the motion to dismiss any differently had it been made prior to trial.

Likewise, Keltner cannot show ineffective assistance of counsel for the failure to seek severance of the burglary charge. The defense theory was that Weller committed the burglary alone and that Keltner did not know the property she later possessed and used was stolen. The evidence showing how the burglary was committed furthered this defense. The evidence allowed defense counsel to argue that someone stronger than Keltner, e.g., Weller, committed the burglary and then convinced Keltner that he had permission to use the credit cards and checks. Because the absence of a motion to

sever can fairly be characterized as tactical, counsel's decision was not deficient performance.

Keltner also fails to demonstrate a reasonable probability that the outcome of the proceedings would have been different had counsel moved to sever the burglary charge. To meet this burden, Keltner must show a reasonable probability that the motion to sever would have been granted and that the outcome of the trials would have been different. State v. Standifer, 48 Wn. App. 121, 125-26, 737 P.2d 1308 (1987). Keltner has shown neither.

To succeed on a motion to sever, a defendant must demonstrate "that a trial involving both counts would be so manifestly prejudicial as to outweigh the concern for judicial economy." State v. Bythrow, 114 Wn.2d 713, 718, 790 P.2d 154 (1990). Factors to be considered include whether (1) the State's evidence is strong on each count, (2) the defenses on each count are clear, (3) the jury instructions require the jury to consider each count separately, and (4) the evidence of each count is admissible on the other count even if not joined for trial. State v. Russell, 125 Wn.2d 24, 63, 882 P.2d 747 (1994). Separate trials are disfavored. State v. Medina, 112 Wn. App. 40, 52, 48 P.3d 1005 (2002).

Considering the relevant factors, we conclude Keltner has not shown that the trial court would likely have granted a motion to sever. The State's evidence was strong on all counts except the residential burglary count. But even the burglary count would have been relatively strong at the time of any motion to sever since, as previously noted, accomplice liability was a viable theory during trial but the State did not request and the

court did not give an accomplice liability instruction. In addition, the defenses on each count were clear and consistent and some of the evidence would have been cross-admissible in separate trials.

Further, the court instructed the jury to consider each count separately. The court instructed the jury, "A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count." See 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 3.01, at 80 (3d ed. 2008). Courts have repeatedly found this type of instruction sufficient to mitigate prejudice from joinder. See, e.g., Bythrow, 114 Wn.2d at 723; State v. Cotton, 75 Wn. App. 669, 688, 879 P.2d 971 (1994). We presume the jury followed the court's instruction. State v. Southerland, 109 Wn.2d 389, 391, 745 P.2d 33 (1987).[2]

Finally, there is no showing that any potential prejudice from joinder outweighed the concern for judicial economy. We conclude there is no reasonable probability that a motion to sever the burglary count would have been granted.

Nor is there a reasonable probability that the outcome would have been different had the residential burglary charge been severed. A jury deciding the identity theft and possession of stolen property counts would have still heard evidence regarding the location and time of the burglary and Keltner's possession and use of the stolen

---

[2] In addition, the prosecutor emphasized the court's instruction in closing, stating, "You have to prove each of those [multiple charges] separately and individually. That's why you have separate to convict instructions, separate verdict forms. Because they are, in fact, separate crimes."

9

property shortly thereafter. The jury would also have heard evidence that Keltner signed the name "Erin Cox" on the credit card receipts and checks, that Keltner's signatures on the credit card receipts and the Costco check were virtually identical, that Keltner told a Costco employee she was replacing items taken in a burglary of her home, and that the Coxes' missing items were found in Keltner's bedroom. In addition, if she testified, the jury would have heard about Keltner's 15 prior convictions for crimes of dishonesty. The outcome of the proceedings would not have been different had the burglary been severed.

We reverse the residential burglary conviction. On remand, the court shall dismiss that conviction with prejudice. We affirm the convictions for second degree identity theft and first degree possession of stolen property.

WE CONCUR: