IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 82177-6-I |
| Respondent, | |
| v. | DIVISION ONE |
| AQUILINO CORONEL-CRUZ, | UNPUBLISHED OPINION |
| Appellant | |

CHUN, J. — The State charged Aquilino Coronel-Cruz with one count of child molestation in the first degree and two counts of rape of a child in the first degree for his alleged acts against E.M., and two counts of child molestation in the third degree and one count of communication with a minor for immoral purposes for his alleged acts against E.W. The trial court granted the State's motion to join the charges and denied Coronel-Cruz's motion to sever them. A jury found him guilty of the charges relating to E.M. It deadlocked on the charges relating to E.W.; the court declared a mistrial as to those. Coronel-Cruz appeals, claiming the trial court abused its discretion in granting joinder and denying severance. For the reasons below, we affirm.

## I. BACKGROUND

A. Facts

Coronel-Cruz lived with his nephew's ex-girlfriend, D.H.A., and her minor sons, E.M. and E.W., for three years until about August 2018. The boys called Coronel-Cruz "Tio" or "Uncle." E.M. and E.W. shared a bedroom. Coronel-Cruz

had his own room with a television. E.M. and E.W. watched movies with Coronel-Cruz in his room. While Coronel-Cruz lived with them and after he moved out, he often took E.M. to run errands. Also while living with them, Coronel-Cruz drove E.W. to soccer practice, to Walmart, and "to eat."

On October 30, 2018, D.H.A. saw "pornographic pages of homosexuals," "[j]ust men," on E.M.'s Facebook page. At that time, E.M. was about 11 years old. E.M. told D.H.A. that he thought he was gay while E.W. was in the room. D.H.A. "separated [E.M. from E.W.] to talk to [E.W.] about it." She said she asked E.M., "Why did he think he was homosexual, if somebody had ever touched his private parts." The next day, E.M. told D.H.A. that Coronel-Cruz touched him. D.H.A. contacted law enforcement, and the day after, she took E.M. to a medical examination and forensic interview with a child interview specialist. E.M. told the child interview specialist that Coronel-Cruz raped him "a lot of times" with the most recent rape occurring on October 27.

Within the next few days, E.W. told D.H.A. that Coronel-Cruz abused him as well. The alleged abuse occurred within the year before, beginning when E.W. was about 14 years old. On November 5, D.H.A. took E.W. to a medical examination. A few days later, the child interview specialist who interviewed E.M. interviewed E.W.

B. Procedural History

The State first charged Coronel-Cruz with one count of child molestation in the first degree and two counts of rape of a child in the first degree for his alleged acts against E.M. The State moved to amend the information by adding two

2

charges of child molestation in the third degree and one charge of communication with a minor for immoral purposes for his alleged acts against E.W. It also moved to join all six charges in one trial under CrR 4.3 and RCW 10.37.060. It contended,

> The counts in this case are appropriately joined for trial because the acts are of a same or similar character under CrR 4.3, and they are of the same class under RCW 10.37.060. These charges of child rape and molestation were committed against the two minor siblings whom the defendant resided with; in either their own home, in the defendant's vehicle, or in the defendant's new residence; and are of a highly similar nature, and would be cross-admissible as evidence of common scheme or plan or motive pursuant to ER 404(b).

And the State argued against severance. It contended that the strength of the State's evidence was the same for each charge because the evidence was largely E.M.'s and E.W.'s testimonies, Coronel-Cruz's defense was general denial to all claims, the court could instruct the jury to compartmentalize the charges, and the evidence was cross-admissible as that of a design or pattern of behavior. It said the evidence was cross-admissible as a pattern involving Coronel-Cruz inviting E.M. and E.W. to watch movies alone with him in his room, asking them about their sexual preferences, driving them individually in his car, and touching their buttocks and penises during the same period. The State also discussed judicial economy, highlighting that if the court did not join the charges, E.M. and E.W., their mother, the primary detective, and child interview specialist would testify twice. It also focused on the "inherent trauma" to E.M. and E.W. should they testify twice.

Coronel-Cruz opposed joinder and moved to sever charges involving alleged acts against E.M. from those involving alleged acts against E.W. Coronel-Cruz said that the evidence supporting E.W.'s allegations was weaker than that supporting E.M.'s. He contended, "[T]he State's evidence on each count is bolstered by having all these charges heard together." He said, "There certainly would not be testimony in regard to DNA in a separate trial regarding counts involving [E.W.]" He also said the defense as to the charges involving alleged acts against E.M. was clearer than the defense as to the charges involving alleged acts against E.W. because, when D.H.A. confronted him about photos she found on his phone, E.M. was motivated to fabricate the story about Coronel-Cruz so she would not think he was gay. Coronel-Cruz said that, assuming the use of a jury instruction about considering each charge independently, because the trial was likely to be long, it would be harder for the jury to compartmentalize. And he said that there were "great differences between these two children and their relationship with Mr. Coronel-Cruz." Finally, he contended the court should not consider judicial economy given the seriousness of the charges against him.

In a pretrial ruling, the trial court considered each severance factor and whether the potential for manifest prejudice outweighed judicial economy. First, it found that because the charges "are all intentional acts, and so the mens rea is similar," the evidence the State must present for the charges involving each victim was not "so different." Second, it found the "clarity of defense" factor was not an issue because Coronel-Cruz's general denial defenses to each count did

4

not conflict. Third, it stated it would instruct the jury to consider the charges separately and presume the jury would follow its instructions. Fourth, it said,

> What is persuasive to the Court is that the individuals who are alleged to have been abused here were of the same family; that they were under the same roof; that there was a familiarity between these alleged victims and the defendant in that they knew him; there was some sort of relationship with the individual; that there was this persuasion to come into the bedroom and act in a certain way; or that there was a similar theme of going on errands, and then allegedly these acts occurred in the vehicle. Those similarities and patterns do suggest a pattern of design that would be cross-admissible to each others' cases.
>
> . . .
>
> And then weighing that out in terms of judicial economy and presentation of witnesses and a similarity in the number of witnesses that would have to testify in both cases, that weighs in favor of trying the cases jointly.

The trial court granted the motion to amend the information and join the charges and denied the motion to sever.

At the start of trial, Coronel-Cruz renewed his motion to sever. In denying the motion, the court said,

> [T]he Court understands that 404(b) acts, by their very nature, can be prejudicial, but the question [is], are they more probative than prejudicial? And when the Court analyzes it in that way, I do find that they are more probative than prejudicial. And the reasons for joining these cases [as] previously articulated under the legal standards remain.

During trial, E.M. testified to the following: He spent more time alone with Coronel-Cruz when D.H.A. was working. He and Coronel-Cruz watched movies in Coronel-Cruz's room. Coronel-Cruz would offer to buy him candy and then would take E.M.'s clothes off and "touch [his] private parts." He said that Coronel-Cruz would put his penis in E.M.'s anus and mouth. E.M. also said that

5

Coronel-Cruz "would make threats" when E.M. "would tell him 'no.'" E.M. said that he rode with Coronel-Cruz in his car and sometimes Coronel-Cruz "would bring [him] to a place like—he will go to the store and buy something. And then after that, he would make [E.M.] put [Coronel-Cruz's] penis in [his] mouth." E.M. said that Coronel-Cruz would say he would "make [E.M.] feel like a woman," he would "call [E.M.] a girl," and he would tell E.M. to "like the color pink or style like that." E.M. said that Coronel-Cruz introduced him to "pictures of men naked." When asked if Coronel-Cruz ever showed him "pictures of men doing sexual acts with each other," E.M. responded, "Yes."

E.W. testified to the following: He often watched television with Coronel-Cruz in Coronel-Cruz's room. E.W. said that when Coronel-Cruz came home from work, "he invited [me] to go watch Netflix." He also said that while they were in Coronel-Cruz's bedroom, he "showed me his parts. . . . It was the part of you use[d] for reproduction." E.W. said, "Sometimes he will grab me and will hug me and will bite me. Sometimes he will paddle on my butt, on my rear, and that was just strange for me," and, "Sometimes he would come from behind and will put his body against my body, on my back. . . . I will try to escape, but he would grab me strongly." E.W. said Coronel-Cruz did this multiple times and when that happened, he could feel Coronel-Cruz's penis against his buttocks. He said that while in the car, Coronel-Cruz tried to grab between his legs and he tried to push Coronel-Cruz away. He also said that Coronel-Cruz took his hand and put it between Coronel-Cruz's legs while in the car. E.W. said,

> One time, I had a soccer practice, and I asked him if he could give

me a ride.  And he asked me if I would allow him to hug me and for my body to be all over his body.  And I told him, no, that that was not right.  And then he just grabbed me and he did what he said he was going to do.

. . .

He'd like grab me and pull all of his body towards me.

When asked whether Coronel-Cruz ever talked with him about having sex with men, E.W. responded, "I think, yes."  And E.W. said Coronel-Cruz told him that he could set him up with a woman and "that this woman could help me lose my virginity," and asked E.W. to send him a picture of his penis that Coronel-Cruz could give to the woman, which E.W. did.  E.W. said that he never told anyone about these instances because he was scared, and that Coronel-Cruz threatened him and told him he would strike him if he told anyone.

Following E.W.'s testimony, Coronel-Cruz renewed his motion to sever, and the trial court acknowledged that it was "an appropriate motion to raise . . . given that the testimony was not exactly how we expected the testimony to be." The court noted that the incidents occurred two years ago and that E.W. and E.M. are "young boys who have different level[s] of memory recall."  It acknowledged, "There is a difference in some of the types of activities that are alleged by [E.M.] versus the alleged activities by [E.W.]."  But the court found there were "similarities in the tactic of isolation and that there are some similarities in the way that it happened allegedly in the bedroom."  It found substantial similarities in the alleged acts because "they happened for a sexual purpose, that there was isolation that occurred, that there was no accident involved, that there was discussions of sexual gratification, [and] that they

7

happened in vehicles." The court denied the motion. Before the end of trial, Coronel-Cruz again renewed his motion to sever, which motion the court denied for the same reasons.

The jury returned guilty verdicts for the three charges involving acts against E.M. The jury deadlocked as the charges involving acts against E.W.; the court declared a mistrial as to those.

During the sentencing hearing, the State proposed written findings of fact and conclusions of law on ER 404(b) cross-admissibility and an order on Coronel-Cruz's motion to sever, both of which the court entered.

Coronel-Cruz appeals.

## II.    ANALYSIS

Coronel-Cruz says the trial court abused its discretion in granting joinder and denying severance of the counts involving acts against E.M. and E.W. We disagree.

We review a trial court's ruling on joinder and severance for abuse of discretion. State v. Bythrow, 114 Wn.2d 713, 717, 790 P.2d 154 (1990). Also, we review a trial court's evidentiary ruling for abuse of discretion. State v. Slater, 197 Wn.2d 660, 667, 486 P.3d 873 (2021). "'Discretion is abused when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons.'" Id. (quoting State v. Blackwell, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993)).

CrR 4.3(a) provides,

Two or more offenses may be joined in one charging document, with

8

each offense stated in a separate count, when the offenses, whether felonies or misdemeanors or both:

(1) Are of the same or similar character, even if not part of a single scheme or plan; or

(2) Are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.[1]

CrR 4.4(b) provides that a trial court "shall grant a severance of offenses whenever . . . the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense."

"Prejudice may result from joinder if the defendant is embarrassed in the presentation of separate defenses, or if use of a single trial invites the jury to cumulate evidence to find guilt or infer a criminal disposition." State v. Russell, 125 Wn.2d 24, 62–63, 882 P.2d 747 (1994). A defendant "seeking severance ha[s] the burden of demonstrating that a trial involving [all] counts would be so manifestly prejudicial as to outweigh the concern for judicial economy." Bythrow, 114 Wn.2d at 718.

To determine whether the "potential for prejudice" requires severance, a trial court considers four factors:

(1) the strength of the State's evidence on each count; (2) the clarity of defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial.

---

[1] See also RCW 10.37.060 ("When there are several charges against any person, or persons, for the same act or transaction, or for two or more acts or transactions connected together, or for two or more acts or transactions of the same class of crimes or offenses, which may be properly joined, instead of having several indictments or informations the whole may be joined in one indictment, or information, in separate counts; and, if two or more indictments are found, or two or more informations filed, in such cases, the court may order such indictments or informations to be consolidated.").

Russell, 125 Wn.2d at 63. "[A]ny residual prejudice must be weighed against the need for judicial economy." Id.

### A. Cross-admissibility of evidence

Coronel-Cruz focuses on the fourth severance factor.[2] He says the trial court abused its discretion by joining the charges and denying severance because the evidence was not cross-admissible. We disagree.

Generally, under ER 404(b), "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." But evidence of other acts of misconduct may be admissible for other limited purposes, including proof of "a common scheme or plan." ER 404(b); State v. Lough, 125 Wn.2d 847, 865, 889 P.2d 487 (1995). "[A] common scheme or plan" arises "when an individual devises a plan and uses it repeatedly to perpetrate separate but very similar crimes." Id. at 855. "Evidence of this second type of common scheme or plan is admissible because it is not an effort to prove the character of the defendant." State v. Gresham, 173 Wn.2d 405, 422, 269 P.3d 207 (2012) (Emphasis omitted).

---

[2] Coronel-Cruz also contends the trial court erred in its findings on the first and second factors. The court wrote, "As to the first factor, the Court finds that, as the evidence on all counts rests almost entirely on a credibility analysis of the named-victim, the strength of the evidence on each count is relatively the same. As to the second . . . , the Court finds that the defenses as to each count are clear and not mutually antagonistic." Coronel-Cruz contends the strength of the evidence was not "relatively the same," and that because the facts and the crimes charged were different, his defenses to each count were "antagonistic." Because his defense was a general denial, it is not readily apparent how this would be so. Nor does he support those contentions with argument or citation to the record. RAP 10.3(a)(6) (Appellants must provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record."). So we do not address them. State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990) ("This court will not consider claims insufficiently argued by the parties.").

We read ER 404(b) along with ER 403, "which allows a trial court to exercise its discretion to exclude otherwise relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice.'" Slater, 197 Wn.2d at 677 (quoting ER 403).

Upon Coronel-Cruz's initial motion for severance, the court found the evidence cross-admissible. It said, "[I]n weighing out of that information—the probative value versus its prejudicial value—that there would be more probative value in admitting those—that conduct that is alleged in both cases." Each time Coronel-Cruz renewed his motion, the trial court reiterated the same rationale, finding the evidence "more probative than prejudicial." When Coronel-Cruz moved for severance after E.M. and E.W. testified, the trial court acknowledged, "[T]he testimony was not exactly how we expected the testimony to be," and that "[t]here is a difference in some of the types of activities that are alleged by [E.M.] versus the alleged activities by [E.W.]." But it found there was a common scheme or pattern sufficient to join the cases. The court entered the following written findings of fact and conclusions of law:

4. All evidence supporting the charged crimes concerning [E.M.] and [E.W.] are cross-admissible as to the charged crimes of the other victim under the 404(b) exception of common scheme or plan, based on the following factors shared between the incidents involving both victims:
   a. They both shared a residence with the defendant.
   b. They both regarded the defendant as a member of the family, calling him "uncle."
   c. The incidents took place within the same period between the summer 2017 and fall 2018.
   d. The incidents with both victims took place in the defendant's bedroom and in the defendant's car.

> e. The incidents occurred after the defendant was able to isolate both victims in those locations.
>
> f. The defendant had discussions with both victims as to their sexuality and/or their sexual identity.

5. The Court finds that evidence of these substantial similarities constitute more than mere coincidence and establish a common design by the defendant to satisfy his sexual compulsions through sexual abuse of children.

6. The Court finds that such evidence is highly probative of the defendant's common scheme or plan, and that its probative value is not outweighed by any danger of unfair prejudice.

Coronel-Cruz says there was no common scheme sufficient to establish ER 404(b) cross-admissibility. In contending the trial court abused its discretion, he assigns error to several findings of fact and conclusions of law on ER 404(b) cross-admissibility. "Appellate review of findings of fact is limited to determining whether they are supported by substantial evidence, and, if so, whether the findings support the conclusions of law and judgment." State v. Macon, 128 Wn.2d 784, 799, 911 P.2d 1004 (1996). "Substantial evidence exists where there is a 'sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding.'" In re Pers. Restraint of Davis, 152 Wn.2d 647, 679, 101 P.3d 1 (2004) (quoting State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994)).

Coronel-Cruz assigns error to finding of fact 3, which says,

All evidence concerning the defendant's conduct towards [E.W.] goes to the charged crimes [involving acts against E.W.], so there is no uncharged evidence that would constitute 404(b) evidence of lustful disposition as to [E.W.]. The only exception is evidence that the defendant offered [E.W.] *marijuana and cocaine,* and/or [E.W.]'s observations of the defendant using marijuana and cocaine. *This evidence is only admissible if [E.W.] can clearly articulate that such incidents occurred during or immediately before/after incidents of charged crimes.* This evidence would be admissible under the

> 404(b) exception of common scheme or plan, as it is relevant to the defendant's design of fostering a relationship of secrecy and hidden behaviors with both victims that they were expected to keep from their mother.

(Emphasis added.) Coronel-Cruz says that because there was no testimony about drugs used to entice the boys or to create a secret with them, there was no evidence of a common scheme or plan. But the court conditioned its ruling on E.W. testifying that the drug-related incidents occurred during, immediately before, and immediately after the charged crimes.[3] E.W. did not so testify, and the trial court did not incorporate any such drug-related incidents into its ruling on joinder and severance. And as discussed below, plenty of cross-admissible evidence of a common scheme or plan shows that the trial court acted within its discretion.

Coronel-Cruz says the trial court erred in entering findings of fact 4(a) through (e), quoted above. But E.M. and E.W. testified that they shared a residence with Coronel-Cruz and called him Tio, and that the alleged incidents occurred during the same time frame and while alone with him in his bedroom and car. E.M. testified:

---

[3] Although this finding was entered after trial, it appears to have been drafted as if E.W. had not yet testified. As mentioned above, during the sentencing hearing, the State proposed written findings of facts and conclusions of law. The trial court then inquired, "[T]he findings, No. 3 talks about an exception about the use of marijuana and cocaine, and I don't recall that that was discussed. . . . I know that the testimony never came in as to that. And so is this provision talking about what was proffered by the State, but, ultimately, it never did come in?" The State responded, "Correct, Your Honor." Defense counsel explained, "I believe that where we left it was that [the State] would have to elicit information specifically relating those incidents . . . , and I don't believe that it was ever elicited." After further discussion, the court said, "As I read it more carefully, it does say, the evidence is only admissible if that condition was made— or that foundation was laid." It also said the instruction "does sort of reserve, in a way, or preconditions the admission of that evidence based on certain issues to be presented to the Court," and entered the findings and conclusions.

> I remember that sometimes we would be home alone, and he would do the same things he did the first time or sometimes he—in his car, he would—he would bring me to a place like—he will go to the store and buy something. And then after that, he would make me put his penis in my mouth.

E.W. also testified to being alone with Coronel-Cruz in his car when he tried to grab between E.W.'s legs or take E.W.'s hand and put it between his legs. So substantial evidence supports those findings.

Coronel-Cruz assigns error to finding of fact 4(f), saying he did not discuss E.M.'s and E.W.'s sexuality with them.[4] But E.M. testified that Coronel-Cruz said he would "make [E.M.] feel like a woman," "call [E.M.] a girl," and tell E.M. to "like the color pink or style like that." E.W. testified that Coronel-Cruz talked with him about having sex with men and Coronel-Cruz told him that he could set E.W. up with a woman. So substantial evidence supports this finding too.

Coronel-Cruz assigns error to findings of fact and conclusions of law 4[5] through 6, which we treat as conclusions of law on cross-admissibility. He says there was no evidence of a common scheme or plan because he did not isolate E.M. in his room. He also says that the allegations of molestation occurring behind his closed bedroom door or in his car are "mere routine descriptions[s] of the common . . . factual circumstances that characterize such crimes in general." "[W]hile the prior act and charged crime must be markedly and substantially similar, the commonality need not be 'a unique method of committing the crime.'"

---

[4] Coronel-Cruz also assigns error to the trial court's findings of fact and conclusions of law 1 and 2 and its unnumbered findings of fact. But he does not provide argument to support his claims, so we do not address them. See RAP 10.3(a)(6); Elliott, 114 Wn.2d at 15.

[5] Excluding its subparts.

Gresham, 173 Wn.2d at 422 (quoting State v. DeVincentis, 150 Wn.2d 11, 20–21, 74 P.3d 119 (2003)). Findings of fact 4(a) through (f) support conclusions 4 through 6. Coronel-Cruz repeatedly used his relationship with and proximity to E.M. and E.W. to isolate the boys in his room and car, touch them, and discuss their sexuality, which supports the conclusions that the "substantial similarities constitute more than mere coincidence and establish a common design by the defendant to satisfy his sexual compulsions through sexual abuse of children." This evidence is also "highly probative of the defendant's common scheme or plan," and Coronel-Cruz has not shown that the danger of unfair prejudice outweighs its probative value.

Thus, substantial evidence supports findings 4(a) through (f), which support the trial court's conclusions in 4 through 6 that the evidence was cross-admissible.

B. Potential for prejudice versus judicial economy

Coronel-Cruz says the joinder and denial of severance was manifestly prejudicial and outweighed the need for judicial economy. We disagree.

As discussed above, a defendant "seeking severance ha[s] the burden of demonstrating that a trial involving [all] counts would be so manifestly prejudicial as to outweigh the concern for judicial economy." Bythrow, 114 Wn.2d at 718.

> Joinder of offenses carries the potential for prejudice if (1) the defendant may have to present separate, possibly conflicting, defenses, (2) the jury may infer guilt on one charge from evidence of another charge, or (3) the cumulative evidence may lead to a guilty verdict on all charges when, if considered separately, the evidence would not support every charge.

15

Slater, 197 Wn.2d at 676–77. After we consider the severance factors, we also weigh the residual "potential for prejudice" "against the need for judicial economy."[6] Russell, 125 Wn.2d at 63. "Foremost among these concerns is the conservation of judicial resources and public funds." Bythrow, 114 Wn.2d at 723.

Because the joinder and severance analyses require weighing the potential for prejudice with judicial economy, we consider them together. See State v. Bluford, 188 Wn.2d 298, 305–10, 393 P.3d 1219 (2017).

In Slater, our Supreme Court considered judicial economy and said, "[W]hile two trials are certainly more time and effort than one trial, the witnesses as to each charge in this case were different. Witnesses would not be tasked with showing up to both trials." 197 Wn.2d at 680. There, the need for judicial economy was outweighed by the potential prejudice because the evidence of each crime was not cross-admissible. Id. Unlike Slater, if the court tried the charges in separate cases, it would have called the witnesses to testify in both trials, including E.M. and E.W., their mother, the primary detective, and the child interview specialist. Here, considering the cross-admissibility of the testimonial evidence and weighing cross-admissibility against judicial economy, the trial court acted within its discretion in determining a lack of impermissible prejudice from trying the counts together.

---

[6] Also, where "each alleged victim would testify in the other's trial," joinder would ensure a "less traumatic trial for the alleged victims, their families, and other witnesses." State v. Beale, noted at 135 Wn. App. 1027, 2006 WL 3018106, at *4; see GR 14.1(c) ("Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions.").

Coronel-Cruz says that the lack of guilty verdicts on the counts involving E.W. shows that the verdicts would have been different on counts involving E.M. if the court had severed the counts. But this court has held that, in the event of joinder and differing verdicts, joinder is not necessarily prejudicial because the different verdicts may show that the jury followed the court's instruction to consider the charges separately. See State v. Standifer, 48 Wn. App. 121, 126–27, 737 P.2d 1308 (1987); State v. York, 50 Wn. App. 446, 452, 749 P.2d 683 (1987). His claim fails because the trial court instructed the jury to consider each charge separately, and we presume the jury followed the instructions.[7] See State v. Warren, 165 Wn.2d 17, 28, 195 P.3d 940 (2008) ("We presume the jury was able to follow the court's instruction.").

The trial court acted within its discretion by joining the charges and denying severance.

We affirm.

_Chun, J._

WE CONCUR:

_____    _____

---

[7] Jury instruction 25 provides, "A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count."