IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 75654-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | ORDER DENYING MOTION |
| v. | ) | FOR RECONSIDERATION |
| | ) | AND WITHDRAWING AND |
| ABDULLAHI KHALIF NOOR, | ) | SUBSTITUTING OPINION |
| | ) | |
| Appellant. | ) | |

Appellant Abdullahi Khalif Noor filed a motion for reconsideration of the opinion filed on February 12, 2018. The State of Washington filed an opposition to the motion. The panel has determined that the motion should be denied but the opinion filed on February 12, 2018 shall be withdrawn and a substitute opinion filed to amend footnote 4 on page 7.

Page 7, footnote 4 states:

> There was no dispute the testimony would show S.K. initially lied to the police about her name and date of birth. Nonetheless, the court stated, "[T]he case law is very clear about use of certain words in closing argument or during the trial that invades the province of the jury by coming to a conclusion about credibility."

Footnote 4 on page 7 shall remove the word "initially" and be replaced and amended as follows:

> There was no dispute the testimony would show S.K. lied to the police about her name and date of birth. Nonetheless, the court

No. 75654-1-I /2

> stated, "[T]he case law is very clear about use of certain words in closing argument or during the trial that invades the province of the jury by coming to a conclusion about credibility."

Now, therefore, it is hereby

ORDERED that appellant's motion for reconsideration is denied and the opinion filed on February 12, 2018 shall be withdrawn and a substitute opinion amending footnote 4 on page 7 shall be filed.

2

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 JUN 11 AM 8: 53

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 75654-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ABDULLAHI KHALIF NOOR, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 11, 2018 |

SCHINDLER, J. — A jury convicted Abdullahi Khalif Noor of rape in the second degree, assault in the fourth degree, witness intimidation, misdemeanor harassment of S.K., and three counts of misdemeanor violation of a court order. The jury convicted Noor of misdemeanor harassment of Ifrah Noor. Noor seeks reversal and a new trial on the grounds that (1) the trial court's instruction to the jury on credibility was an improper comment on the evidence that infringed on his right to present a defense, (2) the court erred by admitting hearsay, (3) his attorney provided ineffective assistance of counsel by failing to renew the motion to sever, (4) the convictions of witness intimidation of S.K. and misdemeanor harassment of S.K. violate double jeopardy, and (5) cumulative error denied him a fair trial. Noor also contends the court erred in calculating the sentencing range for witness intimidation and imposing unrelated community custody conditions.

We affirm the jury convictions but remand for resentencing on intimidation of a witness and to strike the challenged community custody conditions.

## FACTS

S.K. was born in Somalia on September 23, 1998. When she was approximately 6-years-old, S.K. moved to Nairobi, Kenya to live with her grandmother. Her grandmother passed away when S.K. was 11- or 12-years-old. S.K then lived with their neighbors. The neighbors introduced S.K. to Abdullahi Khalif Noor and told her Noor was going to be her husband. Noor and S.K. never married but S.K. went to live with him to take care of his 1-year-old son M.N. Noor left and went to the United States to work as a cab driver. When Noor periodically returned to Kenya, he would berate and beat S.K.

In 2011 or 2012, Noor decided M.N. and S.K. should move to the United States. Noor told S.K. to use "May 12, 1990" as her birthdate and to use his mother's name "Hadiyo Ali." Noor created documents to show that Hadiyo Ali with a May 12, 1990 date of birth and he were married.

S.K. arrived in Seattle in May 2014. S.K. took care of M.N. and M.N. attended school. Noor helped S.K. get a part-time job in a downtown Seattle hotel. Noor demanded S.K. have sex with him. When S.K. tried to refuse sex and get away from him, Noor held her down and put a knife to her neck. After that, S.K. did not "fight back anymore." Noor ordered S.K. not to speak to anyone at the apartment complex and beat her if he thought she had disobeyed.

On the evening of May 28, 2015, S.K. accidentally locked herself out of the apartment. M.N. was asleep inside. S.K. was frantic and was afraid Noor would kill her

if he found out. S.K. went to the apartment of a neighbor, Ifrah Noor, to get help.[1]
Ifrah's son and M.N. attended the same school. Ifrah called Noor. While waiting
outside the apartment for Noor to arrive with a key, S.K. begged Ifrah and Ifrah's sister,
"[D]on't go, don't leave me alone, stay with me." When Noor arrived at approximately
10:00 p.m., he told Ifrah and her sister they could leave.

As Noor and S.K. entered the apartment, Noor kicked S.K. so hard she landed
on the floor. Noor beat S.K. with his fists for approximately three hours until she
vomited blood.

The next morning, S.K. went to her job in downtown Seattle but was unable to
work because she was "throwing up blood" and in pain. S.K. called Ifrah and asked for
help. Ifrah met S.K. at the train station. They walked to Ifrah's mother's house nearby.
Ifrah needed to drive her mother Shukri Osman to Burien. As Ifrah was driving with
Osman and S.K. in the car, she noticed Noor was following her in his car. Ifrah decided
to drive into a store parking lot "because [she] wanted somewhere where there'd be
other people" and parked. Noor pulled up next to them and got out of his car. Noor was
"upset" and began shaking the car. Noor tried to reach through an open window to hit
S.K. Ifrah's mother Osman was able to convince Noor to leave and let the Somali
community address the problem.

S.K. and Ifrah spent the night at Osman's house. Noor left messages on Ifrah's
phone threatening to harm her if S.K. did not return.

The next morning, Ifrah called the police to report the assault of S.K. and the
threats Noor made to Ifrah. The police went to Osman's house. S.K. told the police her

---

[1] Ifrah Noor is not related to the defendant. To avoid confusion, we refer to Ifrah Noor by her first name throughout the opinion.

3

name was Hadiyo Ali. An officer took photographs of her bruises. S.K. went to Swedish Medical Center Emergency Room. S.K. was still in pain and had "multiple contusions" on her body. Child Protective Services (CPS) took M.N. into protective custody.

The police arrested Noor. The city of Seattle charged Noor with misdemeanor assault of "Hadiyo Ali" in the fourth degree. The municipal court issued a no-contact order prohibiting Noor from contacting Hadiyo Ali and Ifrah. Despite the no-contact order, when he was released from jail, Noor lived in the apartment with S.K. and M.N.

The State charged Noor with domestic violence assault of Hadiyo Ali in the fourth degree, two counts of domestic violence misdemeanor violation of a court order "for the protection of Hadiyo F. Ali," and felony harassment and felony stalking of Ifrah.

After the State filed charges, Noor threatened to kill S.K. if she did not convince the police and the prosecutor to drop the charges. Noor told her, "If you don't follow what I tell you, you will not be alive." Noor gave S.K. a new phone and used a different phone to call S.K. so "[t]he police won't know."

Noor threatened to hurt M.N. if S.K. did not obey him. Fearful Noor would hurt M.N., S.K. "stopped going to work" so she could stay home with M.N. On one occasion, a man she did not know "called [S.K.] and said [M.N.]'s father said" to give him M.N. "in 30 minutes." After the man arrived, knocked on the apartment door, and would not leave, S.K. called the police. When Noor threatened to "cut" M.N. and blame it on her, S.K. decided she had "to tell the truth." S.K. met with the prosecutor.

The State filed an amended information changing the name of Hadiyo Ali to "S.K. (DOB 9/23/98) aka H.F.A." The State charged Noor with rape of S.K. in the second

degree, rape of S.K. as a child in the third degree, felony harassment of S.K., witness intimidation of S.K., assault of S.K. in the fourth degree, three counts of misdemeanor violation of the court order protecting S.K., and felony harassment and felony stalking of Ifrah.

The five-day jury trial began on June 2, 2016. The defense theory was S.K. was not credible. The State called several witnesses, including police officers, Ifrah, Ifrah's mother Osman, a Swedish Medical Center employee, and S.K.

S.K. testified that Noor forced her to have sex and beat her. S.K. said Noor told her she "cause[d] all the trouble" and threatened to kill her if she did not convince the police and prosecutor to drop the charges. S.K. said Noor told her to change her statement and say he did not hit her. S.K. testified that Noor forced her to sign a letter to the court and to tell his attorney that she "was lying about" Noor and that "what [she] told the police about being hit wasn't true." S.K. said she was afraid of Noor and she believed he would kill her if she did not comply with his demands.

The defense did not call any witnesses. During closing argument, defense counsel argued S.K. lied and was not credible.

> What is truth, what is a lie. . . . Depending on what facts you accept, you heard from Hadiyo Ali, 26 years old, or you heard from [S.K.], 17 years old. She is either married to my client, or she is not.

The jury found Noor guilty of rape of S.K. in the second degree, assault of S.K. in the fourth degree, witness intimidation of S.K., and three counts of misdemeanor violation of the court order issued to protect S.K.[2] The jury found Noor guilty of

---

[2] By special verdict, the jury found Noor and S.K. were "members of the same family or household" when he committed the crimes.

misdemeanor harassment of S.K. and Ifrah. The jury found Noor not guilty of third degree rape of a child as to S.K. or felony stalking of Ifrah. Noor appeals.

ANALYSIS

Jury Instruction on Credibility

Noor contends the trial court's instruction to the jury on credibility after opening statements and before the State called its first witness was an impermissible comment on the evidence that infringed on his right to present a defense.

Article IV, section 16 of the Washington Constitution prohibits a judge from " 'conveying to the jury his or her personal attitudes toward the merits of the case,' or instructing a jury that 'matters of fact have been established as a matter of law.' " State v. Levy, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006) (quoting State v. Becker, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)). The court may not give an instruction that relieves the State of its burden by "resolv[ing] a contested factual issue for the jury." State v. Brush, 183 Wn.2d 550, 559, 353 P.3d 213 (2015).

The United States Constitution guarantees a criminal defendant " 'a meaningful opportunity to present a complete defense.' " Holmes v. South Carolina, 547 U.S. 319, 324, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006)[3] (quoting Crane v. Kentucky, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986)). But the right to present a defense is subject to "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." Chambers v. Mississippi, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973).

---

[3] Internal quotation marks omitted.

During opening statement, the prosecutor admitted S.K. used a false name and birthdate in her immigration paperwork and initially did not tell the police her real name or date of birth. The prosecutor said the evidence would show Noor told S.K. to use the name Hadiyo Ali and say her date of birth is May 12, 1990.

> [Noor], who had from the outset been feeding [S.K.], and threatening her, and controlling her behavior decided you're not going to be [S.K.]. He told her a new name that she was going to use, and a new date of birth so that he could bring her into the United States as his wife.

During opening statement, defense counsel told the jury, "Now I think by all accounts his wife is a liar. Now that isn't very Seattle-polite to call somebody a liar directly. But it's not in dispute. The question is, at what point is [she] . . . lying." Defense counsel said S.K. either "successfully lied" to the United States government, to the police, and to the hospital employees "as to her identity and her age"; or she was lying now and she was actually "[Noor]'s wife" and "not some child." Defense counsel asserted either S.K. lied when she reported the assault or she lied "when she said that nothing had actually happened." Defense counsel told the jury this is "an exceedingly unusual case where we have such fundamental questions as to who somebody is."

After the opening statements and before the State called its first witness, the court gave an oral instruction to the jury on credibility. The court instructed the jury, "It is your job to determine credibility. It's not the lawyer's job, it's your job."[4]

---

[4] There was no dispute the testimony would show S.K. lied to the police about her name and date of birth. Nonetheless, the court stated, "[T]he case law is very clear about use of certain words in closing argument or during the trial that invades the province of the jury by coming to a conclusion about credibility."

At the conclusion of the evidence, the court instructed the jury on the law, including an instruction on credibility. Jury instruction 1 states, in pertinent part:

> You are the sole judges of the credibility of each witness. You are also the sole judges of the value or weight to be given to the testimony of each witness. . . .
> The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits.

See 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 1.02, at 21 (4th ed. 2016).

An instruction to the jury that accurately states the law does not constitute an impermissible comment on the evidence. State v. Woods, 143 Wn.2d 561, 591, 23 P.3d 1046 (2001). "[I]t is the function of the jury to assess the credibility of a witness and the reasonableness of the witness's responses." State v. Demery, 144 Wn.2d 753, 762, 30 P.3d 1278 (2001). The instruction the court gave to the jury on credibility did not convey a personal opinion or resolve a factual issue and accurately stated the law. The court did not improperly comment on the evidence or infringe on the right to present a defense.

Hearsay

Noor contends the court erred by admitting the hearsay testimony that bolstered the testimony of S.K.

We review evidentiary rulings for abuse of discretion. Peralta v. State, 187 Wn.2d 888, 894, 389 P.3d 596 (2017). A court abuses its discretion if the decision is based on untenable grounds or untenable reasons. State v. Athan, 160 Wn.2d 354, 375-76, 158 P.3d 27 (2007). Hearsay is a statement "other than one made by the

declarant while testifying at trial" offered to prove the truth of the matter asserted. ER 801(c). Unless an exception applies, hearsay is inadmissible. ER 802; Athan, 160 Wn.2d at 382.

During direct examination, the prosecutor asked Ifrah if there was "ever pressure for [her] to not testify." The defense objected as speculative. The court overruled the objection. The court ruled that Ifrah "can testify if she knows the answer from personal experience." Without objection on hearsay grounds, Ifrah testified that she felt pressure not to testify. The prosecutor asked, "And how, or why"? In response, Ifrah testified, "For him, people — men and people are — who are the strong people, they do not testify." Defense counsel objected as speculative. The court overruled the objection. The court ruled, "[I]t's not speculation for her to testify how. And if she knows why, she can testify to that because the question was specific to her."

The prosecutor then asked Ifrah, "So you were saying something about told from the defendant's friends or family had said something to you." Ifrah replied, "Yes." The prosecutor asked, "And what have people said to you"? The defense objected as hearsay. The State argued the answer was admissible to show Ifrah's "state-of-mind and potential for bias." The court overruled the hearsay objection. The State asked Ifrah, "So what did they say to you"? Ifrah testified:

A  They are related between themselves, what are you witnessing (indecipherable) and — and leave that.
Q  Leave that meaning don't testify?
A  Uh huh.

Noor argues the court erred in overruling the hearsay objection on the grounds of state of mind or "potential for bias." The State concedes neither state of mind nor potential for bias supports overruling the hearsay objection. But an evidentiary error is

9

harmless unless " 'within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred.' " State v. Bourgeois, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997) (quoting State v. Tharp, 96 Wn.2d 591, 599, 637 P.2d 961 (1981)). The improper admission of evidence constitutes harmless error " 'if the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole.' " State v. Brockob, 159 Wn.2d 311, 351, 150 P.3d 59 (2006) (quoting Bourgeois, 133 Wn.2d at 403).

In context, Ifrah's testimony that people in the Somali community said, "They are related between themselves, what are you witnessing (indecipherable) and — and leave that," did not materially affect the outcome of the trial. Without objection on hearsay grounds, Ifrah said she felt pressure not to testify because "men and people . . . who are the strong people, they do not testify." Further, the evidence was of minor significance. The overwhelming untainted evidence supports the jury finding Noor guilty of intimidation of S.K. as a witness.

Ineffective Assistance of Counsel

Noor claims his attorney provided ineffective assistance of counsel by failing to renew the motion to sever.

To establish a claim of ineffective assistance of counsel, Noor must show (1) counsel's performance fell below a minimum objective standard of reasonableness and (2) but for counsel's errors, there is a reasonable probability that the result of the trial would have been different. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prevail on an ineffective assistance of counsel claim,

Noor must establish both prongs. State v. Grier, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011).

CrR 4.4(a)(1) requires a defendant to file a motion to sever before trial. If the motion is denied, the defendant may renew the motion on the same ground either before or at the close of the evidence. CrR 4.4(a)(2). "Severance is waived by failure to renew the motion." CrR 4.4(a)(2).

Under CrR 4.3(a), joining offenses in one trial is allowed where the charged offenses " '(1) [a]re of the same or similar character, even if not part of a single scheme or plan; or (2) [a]re based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.' " State v. Bluford, 188 Wn.2d 298, 310, 393 P.3d 1219 (2017).[5] The defendant has the "burden of demonstrating that a trial involving both counts would be so manifestly prejudicial as to outweigh the concern for judicial economy." State v. Bythrow, 114 Wn.2d 713, 718, 790 P.2d 154 (1990). When determining prejudice, we must consider whether (1) the State's evidence is strong on each count, (2) the defense is clear on each count, (3) the trial court instructs the jury to consider each count separately, and (4) the evidence of each count is admissible on the other count. Bluford, 188 Wn.2d at 311-12 (citing State v. Russell, 125 Wn.2d 24, 63, 882 P.2d 747 (1994)).

Before the State filed the amended information, Noor filed a pretrial motion to sever. Noor argued the court should sever the counts that occurred between May and June 2015 (assault of S.K. in the fourth degree, two counts of domestic violence misdemeanor violation of a court order for the protection of S.K., felony harassment of

---

[5] Alterations in original.

Ifrah, and felony stalking of Ifrah) from the counts between July and August 2015 (felony harassment of S.K., intimidation of S.K. as a witness, and domestic violence misdemeanor violation of a court order protecting S.K.). The court granted the State's motion to add rape of S.K. as a child in the third degree, count IX, and rape of S.K. in the second degree, count X. At the hearing on the motion to sever, defense counsel argued that "if the charges are severed, . . . we could proceed with Counts I through VIII, and then a separate trial to be under IX and X." Defense counsel stated, "[W]e would largely be standing on that brief that [sic] as previously filed, because the argument is almost exactly the same."

The court denied the motion to sever. The court concluded the strength of the State's evidence is "a neutral criterion . . . in this particular case." The court found there are no "mutually antagonistic defenses" because the defense is "all general denial." The court concluded there is "substantial cross-admissible evidence" because S.K.'s "history with the defendant will come into play" and she will be "required to come testify" for each of the charges. The court stated it would instruct the jury to "consider the evidence of each crime separately" and noted "how seriously jurors take that instruction." The court ruled Noor did not meet his burden of establishing "a lack of severance would result in manifest prejudice that would outweigh any concerns for judicial economy."

Noor argues a renewed motion to sever would have been granted because "[t]rying two counts of rape with violations of a no-contact order, intimidating a witness, assault and harassment counts runs the great risk of prejudice." We disagree. The record supports finding that the charges are interrelated. The defense on each count

12

was the same and the evidence was cross-admissible.[6] Because Noor cannot show the court would have granted a renewed motion to sever, his claim of ineffective assistance of counsel fails. State v. Emery, 174 Wn.2d 741, 755, 278 P.3d 653 (2012).

Double Jeopardy

Noor contends the jury conviction for misdemeanor harassment of S.K. and the conviction for intimidation of S.K. as a witness violate double jeopardy because the convictions are based on the same threat.

A defendant may raise a double jeopardy claim for the first time on appeal and we review the claim de novo. State v. Mutch, 171 Wn.2d 646, 661-62, 254 P.3d 803 (2011). The Fifth Amendment to the United States Constitution and article 1, section 9 of the Washington Constitution protects a defendant from multiple punishments for the same offense. Mutch, 171 Wn.2d at 661.

Where multiple counts charge the same crime against the same victim and occur during the same period, the court should instruct the jury that each count requires proof of a "separate and distinct" act. Mutch, 171 Wn. 2d at 662-63.

Here, the trial court did not instruct the jury that each count must be based on a separate and distinct criminal act. But the failure to do so only creates the potential for a double jeopardy violation. Mutch, 171 Wn.2d at 663. There is no double jeopardy violation where the information, testimony, argument, and instructions make it " 'manifestly apparent' " to the jury that the State was not seeking to impose multiple.

---

[6] The jury instructions state that the jury shall "decide each count separately. Your verdict on one count should not control your verdict on any other count."

punishments for the same offense. Mutch, 171 Wn.2d at 663[7] (quoting State v. Berg, 147 Wn. App. 923, 931, 198 P.3d 529 (2008)).

In determining whether it was manifestly apparent to the jury that the State was not seeking multiple punishments for the same offense, we may review the entire record before the trial court. Mutch, 171 Wn.2d at 664; see also State v. Peña Fuentes, 179 Wn.2d 808, 824, 318 P.3d 257 (2014) ("On review, the court may consider insufficient instructions 'in light of the full record' to determine if the instructions 'actually effected a double jeopardy error.' ") (quoting Mutch, 171 Wn.2d at 664).

Misdemeanor harassment and intimidation of a witness are different in law because each crime "required proof of a fact that the other did not." State v. Meneses, 169 Wn.2d 586, 594, 238 P.3d 495 (2010). Misdemeanor harassment requires proof that the victim had a reasonable fear the defendant would carry out the threat.[8] RCW 9A.46.020(2)(a), (1)(b). Intimidation of a witness requires proof that the victim is a

---

[7] Emphasis omitted.

[8] Jury instruction 26 states, in pertinent part:

To convict the defendant of the lesser crime of harassment in count VI, each of the following four elements of the crime must be proved beyond a reasonable doubt:

(1) That between July 11, 2015 and August 6, 2015, the defendant knowingly threatened to cause bodily injury immediately or in the future to S.K.;

(2) That the words or conduct of the defendant placed S.K. in reasonable fear that the threat would be carried out;

(3) That the defendant acted without lawful authority; and

(4) That the threat was made or received in the State of Washington.

witness and the defendant made the threat because of the victim's role as a witness.[9]
RCW 9A.72.110.

Noor claims the convictions violated double jeopardy because proof of the two
crimes "relied on a single threat." The record does not support Noor's argument.

The record shows the State did not rely on the same threat. S.K. testified about
two separate threats. S.K. testified that after CPS took custody of M.N., Noor
demanded S.K. "try to get [M.N.] back" from CPS or he would send men to "make [her]
dead." S.K. testified that Noor forced her to ask the court to lift the no-contact order
against him and say Noor "didn't do anything." When the court did not lift the no-contact
order, Noor told S.K. to tell the attorney that "[Noor] didn't hit [her]" and told S.K., "If you
don't follow what I tell you, you will not be alive."

In closing argument, the prosecutor made clear the threats were separate
and distinct. First, the prosecutor addressed the evidence for felony harassment
of S.K., count VI:

> The defendant's also charged with harassing [S.K.]. . . .
> And you heard from Judge Mack the stipulation; that the defendant
> was in jail between July 6th and July 11, 2015. And when he got out, he
> started back up again. So the harassment started when he got out of jail.
> And this is when he calls [S.K.], or he sees [S.K.], and he threatens
> to kill her if she doesn't return his child. He says I'm going to give the men
> pictures of you, and they're going to come and kill you. Again, I don't have
> to just prove that he made the threat, but that [S.K.] was reasonably afraid.

---

[9] Jury instruction 28 states, in pertinent part:

> To convict the defendant of the crime of intimidating a witness, each of the
> following elements of the crime must be proved beyond a reasonable doubt:
> (1) That between July 11, 2015, and August 7, 2015, the defendant by use of a
> threat against a current or prospective witness attempted to
>     (a) influence the testimony of that other person; or
>     (b) induce that person to absent herself from an official proceeding; or
>     (c) induce that person not to give truthful or complete information
> relevant to a criminal investigation; or
>     (d) induce that person not to have the crime prosecuted; and
> (2) That the acts occurred in the State of Washington.

. . . [S.K.] would be reasonably afraid of the defendant after everything that he had done, after everything he had done to her, after everything he had done to Ifrah, after his refusal to follow the court orders, his total indifference to the fact that he was in trouble. Didn't stop him from doing this. She had every reason to be afraid that he was going to carry out that threat. In fact he talked about how it doesn't matter, men in America, they have pistols, they can do this.

Second, the prosecutor addressed the evidence for intimidation of S.K. as a witness, count VII:

Finally there's the Intimidating a Witness charge. And this is pretty straight forward. It's the same time period, between July 11 and August 7th, again, when the defendant was out of custody. And that he is using threats to get [S.K.] to take back her testimony, to try to not cooperate with the prosecution, to not come to court. He told her, don't come to court. He told her to call his lawyer and change her statement. And that if she didn't, that something worse would happen. . . . [H]e threatened to hurt her, or kill her, if she didn't do what he's asking, basically to make the case go away. And for that reason he's Intimidating a Witness.

Based on the entire record, because it was manifestly apparent to the jury that the charges for felony harassment and intimidation of a witness were not based on a single threat, there is no double jeopardy violation.

Cumulative Error

Noor argues cumulative error denied him his right to a fair trial. The cumulative error doctrine applies if there are "several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial." State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000); In re Pers. Restraint of Cross, 180 Wn.2d 664, 690, 327 P.3d 660 (2014). Where, as here, any error had little or no effect on the outcome of the trial, reversal is not required. Cross, 180 Wn.2d at 691; State v. Weber, 159 Wn.2d 252, 279, 149 P.3d 646 (2006).

Witness Intimidation Conviction

Noor contends the court erred in calculating the standard sentencing range for witness intimidation of S.K. With an offender score of 6 and a seriousness level of VI, the correct standard range is 46 to 61 months. See RCW 9.94A.515; .510. But the judgment and sentence incorrectly states the standard range sentence is 46 to 64 months, and the court sentenced Noor to 61 months. The State concedes error. We accept the State's concession as well taken and remand for resentencing on intimidation of a witness, count VII.

Community Custody Conditions

Noor challenges the community custody conditions that impose a curfew; prohibit him from entering sex-related businesses; and prohibit him from possessing, using, accessing, or viewing sexually explicit material as not crime related and argues the conditions must be stricken. The State conceded at oral argument that under State v. Norris, 1 Wn. App. 2d 87, 96-98, 404 P.3d 83 (2017), the conditions are not crime related and must be stricken. We accept the State's concessions as well taken and remand to strike the three community custody conditions.

Statement of Additional Grounds

Noor raises several additional grounds for review under RAP 10.10(a). Noor argues he was denied his right to testify. We cannot review this claim because it requires consideration of matters that are outside the record. State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Noor contends the court erred by excusing two jurors. Noor raises this issue for the first time on appeal. Absent constitutional error,

we do not consider arguments raised for the first time on appeal. RAP 2.5(a); McFarland, 127 Wn.2d at 332-33.

Noor argues the prosecutor committed misconduct during closing argument, but he does not show the prosecutor's argument was either improper or prejudicial. State v. Thorgerson, 172 Wn.2d 438, 460-61, 258 P.3d 43 (2011) (defendant bears the burden of establishing the comments were both improper and prejudicial; misconduct is waived unless the conduct is so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice). Noor contends his attorney provided ineffective assistance of counsel by failing to object to the prosecutor's closing argument. Because the decision of when or whether to object is strategic and a "classic example of trial tactics," Noor cannot show ineffective assistance of counsel. State v. Madison, 53 Wn. App. 754, 763, 770 P.2d 662 (1989); see McFarland, 127 Wn.2d at 335-36.

We affirm the jury convictions but remand for resentencing on intimidation of a witness and to strike the three community custody conditions.

WE CONCUR: