48 P.3d 1005 (2002)
112 Wash.App. 40
STATE of Washington, Respondent,
v.
Raul MEDINA, Appellant.
No. 46206-7-I.
Court of Appeals of Washington, Division 1.
May 13, 2002.
Publication Ordered June 4, 2002.
As Modified June 27, 2002.
*1007 Gregory Charles Link, Seattle, for Appellant.
Stephen Paul Hobbs, King County Prosecutors Office, for Respondent.
*1006 SCHINDLER, J.
Raul Medina was convicted of first degree robbery and first degree kidnapping. He argues that his conviction must be reversed because (1) the State failed to prove each element of first degree kidnapping as set forth in the "to convict" instruction, (2) he was deprived of his right to confrontation when the State introduced a codefendant's statement to the police, and (3) the trial court abused its discretion by denying his motion to sever his case from that of his two codefendants. We disagree. Medina also claims error with respect to his sentence. The State concedes this error. Accordingly, we *1008 affirm the convictions and remand for resentencing.

FACTS
During the evening of August 27, 1999, Russell Elder was pumping gas into his car at an AM/PM station in Shoreline. Medina approached Elder and asked him if he wanted to buy some marijuana. Elder replied that he would purchase five dollars worth. He paid for his gas and parked his car in the AM/PM parking lot. Codefendant Keith Hunt joined them, and Elder, Hunt, and Medina joined a group of approximately six other individuals, including the third codefendant, Adam Aker. They entered a wooded area across the street from the gas station, and, according to Elder, Medina told him that they were going to meet the person who had the marijuana.
Also according to Elder, after the group entered the wooded area, Medina turned and hit Elder in the face. Elder fell to the ground, and members of the group began to punch and kick him. Medina and Hunt went through Elder's pockets and took his car keys, wallet, and ATM card and demanded his ATM access code. Medina left and then returned with Elder's car. The remaining members of the group forced Elder over to his car, where they continued to beat him. Elder said that Medina and another member of the group forced him into the trunk of his car.
Elder testified that he rode in the trunk for about fifteen minutes before the car came to a stop. Its occupants left the car. After the car was stopped, Elder heard a two-way radio nearby. After waiting a few minutes, he knocked on the trunk lid and yelled for help. A Shoreline School District security guard on routine patrol heard Elder's yell and called for help. Fire department employees freed Elder from the trunk.
A few days after the incident, Elder gave a statement to a King County Sheriff's detective. Based on Elder's information, the detective prepared photo montages. Elder identified Medina, Hunt, and Aker from the montages.
When Hunt was arrested, he gave a statement to another detective in which he admitted his involvement in the incident, but limited his involvement to placing his knee on Elder's neck while Medina and others robbed him. Hunt told the detective that he did not hit Elder.
The State charged Medina, Hunt, and Aker with first degree robbery and first degree kidnapping. All three defendants were tried together. Prior to and during trial, Medina moved to sever his case from that of his codefendants because of the State's intent to introduce Hunt's statement and because he claimed that his defense was mutually antagonistic to Hunt's. The trial court denied the motions to sever. The court admitted a redacted version of Hunt's statement and instructed the jury that it could consider the statement only against Hunt, not against either codefendant Medina or Aker.
The jury convicted Medina and Hunt as charged and acquitted Aker. This court affirmed Hunt's conviction in an unpublished, per curiam opinion.[1]

DISCUSSION
Sufficiency of the Evidence
The "to convict" instruction on the first degree kidnapping charge stated in part:
To convict the defendant RAUL MEDINA of the crime of kidnapping in the first degree, as charged in count II, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about August 27, 1999, the defendant or an accomplice intentionally abducted another person;
(2) That the defendant or an accomplice abducted that person with intent to facilitate the commission of Robbery in the First Degree; and
*1009 (3) That the acts occurred in the State of Washington.[[2]]
The "to convict" instruction differs from the language of the statute defining the offense of first degree kidnapping[3] in that it does not include the "or flight thereafter" alternative. Specifically, under the statute, a person is guilty of first degree kidnapping if he or she intentionally abducts another person with intent "[t]o facilitate commission of any felony or flight thereafter".[4] But, under the instructions given here, the jury could convict Medina of first degree kidnapping only if it found that he or an accomplice abducted Elder with intent to facilitate the commission of first degree robbery. The State did not object to the "to convict" instruction. The instruction, therefore, became the law of the case and the State had the burden of proving the crime as set forth in the "to convict" instruction.[5]
Medina argues that the State failed to prove that he kidnapped Elder to facilitate the commission of first degree robbery because the robbery of Elder was complete before the kidnapping began. Evidence is sufficient to support a conviction if, assuming the truth of the State's evidence of guilt, a rational trier of fact could find each of the essential elements of the charged crime.[6]
Medina relies on State v. Allen,[7] in which, under the specific facts presented, the court held that the crimes of first degree robbery and first degree kidnapping did not merge and that the trial court did not err by failing to dismiss the kidnapping charge as duplicitous. In that case, the defendants pointed a rifle at a convenience store clerk and told him to get into the back seat of their car. The defendant complied and one of the defendants entered the store and took the cash register drawer. The defendants told the clerk to lie down in the car, and they drove away. They drove approximately three blocks and released the clerk.
The Supreme Court held that the crimes with which the defendants were charged, first degree robbery and first degree kidnapping, did not merge because "[o]nce the money had been obtained by force, the robbery was completed."[8] The court stated that neither the flight from the scene of the robbery nor the means of flight from the scene was statutorily or logically a part of the robbery. Accordingly, the court held that the trial court did not err by refusing to dismiss the kidnapping charge.[9]
Based on Allen, Medina argues that the robbery here was complete after Medina and the others took Elder's wallet and keys, which occurred before they forced Elder into the trunk. So, he argues, the State could not prove that the kidnapping occurred to facilitate the commission of the robbery.
There is a significant difference between this case and Allen. In Allen, the defendants took the cash register drawer from the store and forced the victim into their own car. Here, by contrast, in addition to taking Elder's wallet and keys, the defendants took his car as well.[10] Unlike Allen, the robbery here was not complete once the defendants took Elder's wallet and keys, but rather it continued with the taking of Elder's car. The evidence was sufficient to prove that Medina committed first degree kidnapping as that offense was defined in the "to convict" instruction. That is, the evidence *1010 was sufficient to prove that Medina committed the kidnapping with intent to facilitate the commission of first degree robbery.[11]
Admission of Hunt's Redacted Statement
Keith Hunt, one of the three codefendants at trial, gave the police a statement of his version of the events that occurred during the evening of August 27, 1999. The trial court allowed the State to introduce a redacted version of Hunt's statement. In addition, Detective Bradley Ray read the statement into the record during trial. Immediately after Hunt's statement was read and introduced, the trial court instructed the jury as follows:
You may consider that statement only in the case that the State is presenting against Mr. Hunt. It is admitted for that purpose only. There will probably be some additional instructions on this point, but I would ask the jury perhaps to make a mental note or an actual note if you are taking notes that any statement by a defendant is admissible against him in his case alone. Thank you.
The court similarly instructed the jury at the close of the case.[12]
Medina argues that the admission of Hunt's statement deprived him of his right to confrontation. We review alleged violations of the state and federal confrontation clauses[13] de novo.[14]
The Confrontation Clause guarantees the right of a criminal defendant "to be confronted with witnesses against him."[15] Because the right of confrontation includes the right to cross-examine witnesses, "where two defendants are tried jointly, the pretrial confession of one cannot be admitted against the other unless the confessing defendant takes the stand."[16] Usually, a witness whose testimony is introduced in a joint trial is not deemed to be a "witness" against a defendant if the jury is instructed to consider the witness's testimony only against a codefendant.[17] There is a narrow exception to this principle, first set forth in Bruton v. United States.[18] A criminal defendant is denied the right of confrontation when a nontestifying codefendant's confession that names the defendant as a participant in the crime is admitted at a joint trial, even where the court instructs the jury to consider the confession only against the codefendant.[19] In Richardson v. Marsh,[20] the United States Supreme Court further defined the scope of this exception:
We hold that the Confrontation Clause is not violated by the admission of a nontestifying *1011 codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence.[21]
The confession admitted in Richardson was given by the codefendant. It was redacted to omit all reference to the defendant and to omit all indication that anyone other than the codefendant and a third person (who was charged with the two others but who was a fugitive at the time of trial) participated in the crime. Upon admission of the confession, the court instructed the jury not to use it in any way against the defendant Richardson. The Supreme Court characterized the confession as not incriminating on its face, but rather incriminating only when linked with evidence later introduced at trial, namely the respondent's own testimony. Thus, the Court concluded, the confession was different from the confession at issue in Bruton which was incriminating on its face and expressly implicated the codefendant. The Court later interpreted its holding in Richardson to "place[ ] outside the scope of Bruton's rule those statements that incriminate inferentially."[22]
In Gray v. Maryland,[23] Gray and a codefendant Bell were tried together for murder. The trial court allowed the State to introduce a redacted version of Bell's confession. A detective read the statement to the jury and said "deleted" or "deletion" whenever the name of Gray or the deceased third participant appeared. Immediately after reading Bell's statement, the prosecutor asked the detective, "`after he gave you that information, you subsequently were able to arrest Mr. Kevin Gray; is that correct?'"[24] The State also introduced a copy of the confession with the names of Gray and the third participant omitted. In place of the names were blank spaces separated by commas. The trial judge instructed the jury that the confession was evidence only against Bell and that the jury was not to use the confession as evidence against Gray.
The Supreme Court vacated the state's highest court's decision that reinstated Gray's conviction following reversal by the intermediate appellate court, stating:
Redactions that simply replace a name with an obvious blank space or a word such as "deleted" or a symbol or other similarly obvious indications of alteration, however, leave statements that, considered as a class, so closely resemble Bruton's unredacted statements that, in our view, the law must require the same result.[[25]]
The Court was of the opinion that statements redacted to leave a blank or other obvious alteration are directly accusatory and point directly at a defendant.
The Court stated that the application of Richardson depends on the kind of inference, rather than the simple fact of inference. The confession in Richardson contained inferences that did not refer directly to the defendant, but rather became incriminating only when linked with evidence later introduced at trial. By contrast, the inferences arising from the type of confession admitted in Gray, even though redacted, obviously referred directly to someone, often the defendant, and were inferences a jury could make immediately. The Court noted that the confession as read to the jury stated in part: "`Question: who was in the group that beat Stacy? Answer: Me, deleted, deleted, and a few other guys.'"[26] In its opinion, the Court asked: "Why could the witness not, instead, have said: `Question: Who was in the group that beat Stacy? Answer: Me and a few other guys.'"[27] Although the Court did not directly state that such a redaction would be proper, it is reasonable to assume that the *1012 Court was of the opinion that it would be proper.
Hunts redacted statement refers to "other guys," "the guy," "a guy," "one guy," and "they." The statement was altered in such a way that it became so ambiguous that it is impossible to track the activities of any particular "guy" referenced in the statement. The statement did not refer directly to a particular individual or to Medina, nor did the inferences refer directly to Medina. Although three persons were charged, the testimony established that there were approximately six individuals involved. Therefore, the references to "the guys" and a "guy" did not create the inference of identification of Medina or Akers. The statement did not contain any blanks or other obvious indications of alteration. The detective did not say "deleted" or any similar word when reading the statement to the jury and thus did not indicate any omissions or alterations in the statement. Moreover, the court instructed the jury twice about the limited use to which it could put Hunts statement. The fact that the jury acquitted one of the codefendants is also an indication that no specific individual was identified and that the jury did not base its verdict on the statement. The admission of Hunts statement, as redacted, did not deprive Medina of his right of confrontation.
Motion to Sever
Medina moved to sever his trial from that of Hunt and Aker under CrR 4.4(c)(1) on the ground that the admission of Hunt's statement was inadmissible against him. Under that rule, the court "shall" grant a defendants motion for severance on the ground that an out-of-court statement of a codefendant referring to him is inadmissible against him unless "the prosecuting attorney elects not to offer the statement in the case in chief"[28] and "deletion of all references to the moving defendant will eliminate any prejudice to him from the admission of the statement."[29]
As discussed above, all references to Medina were deleted from the statement. Also, the redacted version is sufficiently ambiguous so as to prevent a reader of listener from identifying which "guy" did what. The trial court did not err by denying Medina's motion to sever pursuant to CrR 4.4(c)(1).
Medina also argues that the court should have granted his motion to sever under CrR 4.4(c)(2), under which a court "should" grant a motion to sever when:
(i) if before trial, it is deemed necessary to protect a defendants rights to a speedy trial, or it is deemed appropriate to promote a fair determination of the guilt or innocence of a defendant; or
(ii) if during trial upon consent of the severed defendant, it is deemed necessary to achieve a fair determination of the guilt or innocence of a defendant.[[30]]
The law does not favor separate trials.[31] We review the denial of a motion to sever for manifest abuse of discretion.[32] "Defendants seeking severance have the burden of demonstrating that a trial involving both counts would be so manifestly prejudicial as to outweigh the concern for judicial economy."[33] Specific prejudice may be demonstrated by showing "antagonistic defenses conflicting to the point of being irreconcilable and mutually exclusive."[34]
The existence of mutually antagonistic defenses is not alone sufficient to compel separate trials. Rather, it must be demonstrated that the conflict is so prejudicial that defenses are irreconcilable, and the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty. The burden is on a moving party to come forward with sufficient facts to *1013 warrant the exercise of discretion in his or her favor.[[35]]
To warrant severance, the defenses must be "mutually exclusive to the extent that one must be believed if the other is disbelieved."[36]
Detective Strathy testified that he met with Medina at the Shoreline police station when Medina was in custody. After advising Medina of his constitutional rights, the detective asked him questions about the incident and advised Medina that Elder had identified him from a photo montage. Medina denied hitting Elder and said that he was involved only to the extent of holding Elder down while another person punched him so he could rob him. He also said that he got in Elder's car with seven other people and sat in the back seat of Elder's car while another person drove and while Elder was in the trunk. Then Medina told the detective that he lied. Two minutes after that, he said that what he had told the detective was the truth.
According to Hunt's statement, Hunt did not hit or kick Elder either. Rather, Hunt stated that his involvement was only to the extent of holding Elder down.
These two defenses are not mutually antagonistic. Because there was evidence that more than two people were involved in the incident, the jury did not necessarily have to disbelieve one defense in order to believe the other.
Medina alluded to another defense as well. Specifically, during opening argument, his counsel argued that the incident occurred over an attempted cocaine deal, not a marijuana deal. He argued that nobody punched or kicked Elder, but rather that Elder had given the others $500 and voluntarily got in his trunk so the others could drive to a secret location to get the cocaine without Elder knowing where they went. Nobody testified about this scenario. Medina's counsel questioned Elder about it, but Elder unequivocally denied that this was what happened.
This theory consisted mostly of defense counsel's unsupported assertions. To the extent it can legitimately be called a "defense," it is inconsistent with Hunts statement to the extent that, under this theory, nobody hit Elder. However, it is likewise inconsistent with Detective Strathy's testimony about what Medina had told him during the interview at the police station. But, there was no evidence to support the cocaine transaction theory. In fact, the only evidence regarding this theory was Elder's categorical denial of it. The jury was instructed to disregard any remark of counsel that was not supported by the evidence, so the jury is presumed to have disregarded defense counsel's argument about the cocaine transaction. That left only Hunt's statement and Detective Strathy's testimony about what Medina told him regarding the incident. Because these two statements were not mutually antagonistic, the trial court did not abuse its discretion by denying Medina's motion to sever.
Sentencing
The State concedes that the inclusion of Medina's 1989 juvenile conviction in calculating his offender score was error in light of State v. Smith[37] and that the matter must be remanded for resentencing.

CONCLUSION
We affirm Medina's convictions of first degree robbery and first degree kidnapping. We remand the matter for resentencing in light of State v. Smith.
COLEMAN and ELLINGTON, JJ., concur.
NOTES
[1] State v. Hunt, 106 Wash.App. 1004 (2001). The issue in Hunt was whether the trial court abused its discretion by admitting testimony establishing Elder's state of mind and by denying Hunt's request for a limiting instruction.
[2] CP 68.
[3] RCW 9A.40.020.
[4] RCW 9A.40.020(1)(b).
[5] State v. Hickman, 135 Wash.2d 97, 102, 954 P.2d 900 (1998).
[6] State v. Perez-Cervantes, 141 Wash.2d 468, 483, 6 P.3d 1160 (2000).
[7] 94 Wash.2d 860, 621 P.2d 143 (1980).
[8] Allen, 94 Wash.2d at 864, 621 P.2d 143.
[9] In State v. Vladovic, 99 Wash.2d 413, 662 P.2d 853 (1983), the court abrogated Allen to the extent it stated, in dicta, that had the kidnapping merely been incidental to the robbery, the kidnapping would have merged into the robbery as a matter of law. Vladovic, 99 Wash.2d at 420, 662 P.2d 853. Medina does not rely on this abrogated statement. Also, as discussed, Allen is distinguishable.
[10] The amended information charged Medina, Hunt, and Aker with taking Elder's "automobile keys and an automobile." CP 8.
[11] The fact that Medina proposed a "to convict" instruction that did not contain the "flight thereafter" alternative does not preclude his argument under the invited error doctrine. That doctrine applies when a party requests an instruction and then argues on appeal that the instruction should not have been given. State v. Studd, 137 Wash.2d 533, 546, 973 P.2d 1049 (1999). Medina does not argue on appeal that the "to convict" instruction was erroneously given, so the invited error doctrine does not apply.
[12] Instruction number 8 stated in part: "Evidence regarding a statement allegedly made by Keith Hunt may be considered by you for the limited purpose of determining whether Keith Hunt committed the crimes charged and for no other purpose. Such evidence may not be used against Raul Medina or Adam Aker in any way." CP 53.
[13] U.S. Const. amend. 6; Const. art. 1, § 22.
[14] State v. Larry, 108 Wash.App. 894, 902, 34 P.3d 241 (2001).
[15] U.S. Const. amend. 6.
[16] Richardson v. Marsh, 481 U.S. 200, 206, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987).
[17] Richardson, 481 U.S. at 206, 107 S.Ct. 1702.
[18] 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).
[19] Bruton, 391 U.S. at 127-28, 88 S.Ct. 1620. The Court stated: "[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial". Id., 391 U.S. at 135-36, 88 S.Ct. 1620.
[20] 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176.
[21] Richardson, 481 U.S. at 211, 107 S.Ct. 1702.
[22] Gray v. Maryland, 523 U.S. 185, 195, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998).
[23] 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294.
[24] Gray, 523 U.S. at 188-89, 118 S.Ct. 1151.
[25] Gray, 523 U.S. at 192, 118 S.Ct. 1151.
[26] Id., at 196, 118 S.Ct. 1151.
[27] Id. The Court noted: "Additional redaction of a confession that uses a blank space, the word `delete,' or a symbol, however, normally is possible." Id.
[28] CrR 4.4(c)(1)(i)
[29] CrR 4.4(c)(1)(ii).
[30] CrR 4.4(c)(2).
[31] State v. Dent, 123 Wash.2d 467, 484, 869 P.2d 392 (1994).
[32] State v. Bythrow, 114 Wash.2d 713, 717, 790 P.2d 154 (1990).
[33] Id., 114 Wash.2d at 718, 790 P.2d 154.
[34] State v. Canedo-Astorga, 79 Wash.App. 518, 528, 903 P.2d 500 (1995).
[35] State v. Hoffman, 116 Wash.2d 51, 74, 804 P.2d 577 (1991).
[36] State v. McKinzy, 72 Wash.App. 85, 90, 863 P.2d 594 (1993).
[37] 144 Wash.2d 665, 30 P.3d 1245 (2001).